ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Lloyd.farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW HENDERSON,<br><br>Defendant. | CASE NO. 19-CR-00393 RS<br><br>UNITED STATES' SENTENCING MEMORANDUM AND MOTION PURSUANT TO U.S.S.G. § 5K1.1<br><br>Date: July 18, 2023<br>Hon. Richard Seeborg<br>In person, 9:30 a.m. |

## INTRODUCTION

The United States respectfully submits this Sentencing Memorandum in advance of the sentencing hearing for defendant Matthew Henderson, scheduled for July 18, 2023. Matthew Henderson has pleaded guilty to one count of conspiracy, in violation of 18 U.S.C. § 371, pursuant to a plea agreement that contemplated his cooperation with the charging and prosecution of the defendants in a related matter, *United States v. Thomas Henderson, et al.*, No. 19-CR-00376 RS.

The government seeks a downward departure under USSG § 5K1.1 based on Matthew Henderson's cooperation, and in light of that cooperation as well as the circumstances of the case and the sentences imposed on other defendants, the government recommends a sentence of three years probation with a condition of four months home confinement.

## BACKGROUND

The overall scheme to defraud orchestrated by co-conspirator Thomas Henderson, and defendant Matthew Henderson's role in the fraud scheme, are described in the Presentence Report. The government has no outstanding objections to the facts as described in the PSR and requests that the Court adopt its findings. As discussed below, the government disagrees with the loss amount used in the PSR to calculate the appropriate guidelines offense level.

### A. SFRC and the Seven EB-5 Projects

This case involves a years-long scheme conceived and led by Thomas Henderson, the father of defendant Matthew Henderson. Thomas Henderson started and then operated the San Francisco Regional Center (SFRC) from 2011 through 2017. As explained in the PSR, SFRC raised funds from investors through the EB-5 visa program for seven separate projects. Investors in each of the seven separate EB-5 projects were told and believed—and the EB-5 program required—that investor money would be used for the project associated with the particular investment and investor. However, by 2013, Thomas Henderson and SFRC were using new investor money for other purposes, including prior projects that had run out of money, acquiring property owned in significant part by Thomas Henderson or other entities he controlled, and separate business ventures either unrelated, or only tangentially-related, to the investors' businesses. By 2014, as he continued to raise money for new projects, Thomas Henderson was misleading foreign investors and the U.S. Citizenship and Immigration Services (USCIS) about how the projects were being funded and the use of the funds. Though SFRC raised more than $60 million for three later projects, Callsocket III, NA3PL, and California Gold Medal, only a tiny portion of those funds were retained and spent for the benefit of those businesses.

The following table shows the total amount of funds raised by all the SFRC entities:

| EB-5 Project | Short | Beg Date | End Date | No. Inv. | Capital Cont. | Synd. Fees | Total |
|---|---|---|---|---|---|---|---|
| Comp. Care of Oakland LP | CCOO | 12/21/2011 | 12/18/2013 | 8 | $4,001,000 | $309,325 | $4,310,325 |
| Callsocket LP | CS | 4/9/2012 | 6/24/2013 | 36 | $17,500,000 | $1,608,660 | $19,108,660 |
| Callsocket II LP | CS II | 11/13/2012 | 3/10/2014 | 32 | $16,000,000 | $1,555,964 | $17,555,964 |
| Callsocket III LP | CS III | 12/2/2013 | 1/8/2016 | 40 | $19,948,140 | $1,751,676 | $21,699,816 |
| North America 3PL, LP | NA3PL | 5/28/2014 | 3/29/2016 | 42 | $20,991,934 | $2,151,385 | $23,143,319 |
| California Gold Medal LP | CGM | 9/4/2015 | 1/5/2017 | 47 | $23,461,927 | $1,442,464 | $24,904,391 |
| West Oakland Plaza LP | WOP | 9/15/2015 | 9/16/2016 | 4 | $1,996,404 | $199,906 | $2,196,310 |
| | | | | | | | |
| | | | | | $103,899,405 | $9,019,381 | $112,918,786 |

**B.     Matthew Henderson's Role in the Conspiracy**

In his plea agreement, Matthew Henderson admits that he joined in a conspiracy with Thomas Henderson and Peter Hu no later than October 2014, and that by that time he knew that funds raised from investors for particular EB-5 projects were being used for other purposes not related to the projects—including the use of investor funds to pay the startup costs of two restaurants in Oakland. Dkt. 5 at 2-3 (Plea Agreement filed Oct. 11, 2019).  He also admits that he participated in the conspiracy from November 2014 until March 2017 (when the receiver was appointed to take over SFRC and the related entities) by continuing to work for SFRC, assist with some of the projects, and assist with soliciting investors.  *Id.*  During that entire time, November 2014 to March 2017, he admits that he knew that "investment funds raised from the EB-5 projects were being comingled with funds from other projects and were being used for projects or expenses unrelated to the particular investors' projects."  *Id.* at 3.

Matthew Henderson also admitted to a particular incident that shows he joined the conspiracy, and that he intended to defraud the investors in SFRC-sponsored projects.  In October 2014, Matthew Henderson directly lied to CallSocket II investors about whether their investment funds were still in escrow, misleading them when he showed them back statements that he knew were false, and hid the fact that CallSocket II investor funds had already been diverted.  *Id.*

He also admits that he was aware that an illegal object of the conspiracy was to divert investor funds, and he admits he understood that the diverting of investor funds from the SFRC EB-5 projects "would jeopardize the investors' ability to obtain a permanent green card through the EB-5 visa program."  *Id.* at 4.

Matthew Henderson was a part owner of SFRC (PSR at 6) and would have benefitted from any profits made by, or property or businesses owned by, SFRC.

**C.     The Loss Caused by Diversion of Investor Funds**

The object of the conspiracy between Matthew Henderson, Thomas Henderson, and others was to secretly divert investor funds to older, prior EB-5 projects and other unrelated business ventures.  In connection with the sentencing of co-conspirator Thomas Henderson, the government presented a reasonable and conservative estimate of the loss caused by conduct charged in the cases against Thomas

Henderson and the other co-conspirators, as described below.

In order to estimate the intended loss attributable to the scheme and conspiracy, the government analyzed how investor funds were used in three of the EB-5 projects that were later in time and were the entities from which the most funds were diverted by Thomas Henderson to pay for older projects or outside businesses: Callsocket III, North America 3PL ("NA3PL"), and California Gold Medal.

As described in the affidavit of David Pinck, attached hereto as Exhibit 1 and previously submitted to the Court in connection with the sentencing of Thomas Henderson, the following amounts of investor money was diverted from each of those three projects as part of the scheme:

| | |
|---|---:|
| CSIII: | $15,596,809.03 |
| NA3PL: | $16,505,056.51 |
| CGM: | $1,947,090.13 |
| Total: | $34,048,955.67 |

**D. Relevant Terms of the Plea Agreement**

The United States filed an Information on August 22, 2019 charging Matthew Henderson with one count of 18 U.S.C. § 371, conspiracy to commit an offense against the United States, and on October 11, 2019 he pleaded guilty to that count pursuant to a plea agreement.

The plea agreement includes a statement of agreed facts in which Matthew Henderson admits that he conspired with Thomas Henderson and Peter Hu to obtain investment funds from foreign investors in the EB-5 visa program through false and misleading statements.

As part of the agreement, Matthew Henderson agreed to cooperate with the government, including meeting when requested, responding truthfully to all questions in any interviews or testimony, and to testify at any trial, including the trial on charges against Thomas Henderson and others. If Mathew Henderson cooperated fully and truthfully and provided substantial assistance, the government agreed to seek a downward departure under USSG § 5K1.1 or 18 U.S.C. § 3553.

**DISCUSSION**

**A. Guidelines Calculation**

The PSR calculates the total offense level as level 21, based on the following: A base offense level of 6, increased by 20 levels for a loss amount of more than $9.5 million. The offense level is

adjusted downward by 2 levels for a minor role under USSG § 3B1.2(b), and a three-level decrease for acceptance of responsibility.

The government agrees with this calculation except for the adjustment based on the loss amount attributable to the relevant offense conduct. Where a defendant participated in conspiracy, relevant conduct under the guidelines includes "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." USSG § 1B1.3(a)(1)(B). The loss amount under USSG § 2B1.1(b) should include the amount of loss attributable to the conspiracy that Matthew Henderson joined and acted in furtherance of, and in this case should be the same amount as the Court determined was attributable to Thomas Henderson's conduct—which was more than $34 million. Accordingly, the government contends that the base offense level should be increased by 22 levels, resulting in a total offense level of 23 instead of 21.

The defendant Matthew Henderson has no criminal history points, and is therefore in Criminal History Category I. An amendment to the U.S. Sentencing Guidelines set to take effect November 1, 2023 includes a new "zero-point" provision, which will decrease an offense level by two points in certain circumstances for defendants who have no criminal history points. Because the new amendment has not yet taken effect, no adjustment to the calculation of the offense level in this case is appropriate; however, the government does not oppose a variance from the guidelines sentence equivalent to two offense levels. The government's sentencing recommendation in this case already accounts for this variance, and the motion for a departure based on substantial assistance and the resulting sentence recommended by the government is well below the otherwise applicable guidelines range.

**B. Government Motion for a Downward Departure under USSG § 5K1.1**

The defendant Matthew Henderson entered a guilty plea on October 11, 2019, pursuant to a plea agreement that required him to cooperate with the government's investigation, provide complete and truthful information, and testify at any trial or other proceedings in the case. The government agreed to evaluate the defendant's cooperation at the time of sentencing and determine whether to seek a departure for substantial assistance.

Matthew Henderson provided substantial assistance to the government in this case. During

interviews both prior to and following the indictment of Thomas Henderson and Peter Hu, Matthew Henderson provided critical information about the scheme and conspiracy to defraud investors by comingling investor funds, diverting investor funds for purposes other than the investors' EB-5 projects, and providing false information to USCIS regarding the EB-5 projects and use of investor funds.

Matthew Henderson's cooperation was key to developing evidence that Thomas Henderson acted with the intent to defraud, including recounting the episode in October 2014 where Matthew Henderson, Thomas Henderson, and Peter Hu agreed to mislead certain CallSocket II investors. The information provided—and the expected testimony at trial if Thomas Henderson and Cooper Lee had not entered guilty pleas—was critical to obtaining convictions. The government believes that Matthew Henderson was truthful and complete in his interviews.

Accordingly, the government moves for a significant departure under USSG § 5K1.1. The government's ultimate sentencing recommendation relies on various factors, including the departure for substantial assistance, the sentences imposed on other defendants in the case, and the circumstances of the defendant and the crime.

**C. Government Sentencing Recommendation**

The goal of a sentencing court in each case is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); 18 U.S.C. § 3553(a)(2). After determining the applicable guidelines range, the Court should then consider the factors outlined in Section 3553(a) to determine the appropriate sentence. *Id.*

A significant variance from the applicable guidelines range is appropriate in this case even prior to the consideration of the government's motion for a departure under USSG § 5K1.1.

First, the Court should consider the sentences imposed on other defendants in this case. The Court sentenced Thomas Henderson to 16 months in prison. Thomas Henderson is the most culpable defendant, who was the primary instigator of the fraud as the leader of SFRC and the primary contact for many investors, and the person who controlled the financial accounts of the enterprise. The Court

sentenced co-defendant Cooper Lee to probation with a condition he serve eight months in home confinement. Lee did not cooperate, but he joined the conspiracy significantly later than Matthew Henderson, and Lee's involvement in the fraud was limited to the fraudulent diversion of investor funds related to the California Gold Medal project.

Second, the Court should consider Matthew Henderson's relative culpability in the overall circumstances of the criminal conduct at issue. Even though Matthew Henderson continued to assist with the operation of SFRC, the EB-5 projects, and the raising of investor capital after he knew that investors were being misled, Thomas Henderson was the driver of the fraudulent scheme. Thomas Henderson either made or directed the false statements to USCIS, and he was the most knowledgeable about how investor funds were being misused.

Third, a contributor to the motive for Matthew Henderson to commit the fraud was the complex relationship between him and his father. Thomas Henderson actively sought to have his son involved in SFRC and encouraged him to lie to investors when it was necessary to continue and further the fraud. There also appear to be instances where Thomas Henderson leveraged his relationship with Matthew Henderson to encourage continued participation in the fraud. While not a defense to the charges or an excuse for the criminal conduct, these aspects could be considered as mitigating circumstances.

Finally, given the unique circumstances that gave rise to this EB-5 investment fraud scheme, and the father-son relationship that was central to Matthew Henderson's decision to be involved in the criminal conduct, Matthew Henderson is unlikely to repeat this conduct or commit future financial crimes. For these reasons, and in light of his substantial assistance and cooperation in the case, the government recommends a sentence of three years probation with a condition of four months home confinement.

DATED: July 11, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
LLOYD FARNHAM
Assistant United States Attorney

# EXHIBIT 1

STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Lloyd.Farnham @ usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS HENDERSON,<br><br>Defendant. | CASE NO. 19-CR-00376 RS<br><br>DECLARATION OF DAVID PINCK IN SUPPORT OF UNITED STATES' SENTENCING MEMORANDUM |

I, David Pinck, hereby declare and state as follows:

**A. Background**

1. I am currently employed as an Investigative Analyst of the Diplomatic Security Service ("DSS"), which is an agency of the United States Department of State, and I have been so employed for more than eight years. I am currently assigned to the Document and Benefit Fraud Task Force, which is operated by the U.S. Department of Homeland Security. This task force investigates sophisticated immigration frauds in the San Francisco Bay Area, and as a participant in this task force I have received and continue to receive specialized training and instruction from State Department officers who specialize in money laundering, financial fraud, immigration fraud, and visa fraud. Prior to DSS, I worked for more than six years as an Investigator for the United States Department of Labor

investigating fraud and embezzlement.  I have a Master's in Criminal Justice from California State University, Sacramento.

**B.      Objective and Methodology**

2.      I have participated in and supported the criminal investigation involving the San Francisco Regional Center ("SFRC"), Thomas Henderson, and other related entities and individuals since its inception.  As part of that work supporting this investigation, I have become familiar with entities involved in the EB-5 visa program, the petitions and other materials submitted to the U.S. Citizenship and Immigration Services ("USCIS"), and the financial accounts and institutions used by SFRC, Henderson, and other entities, including all the limited partnerships and LLCs that were used as the investor partnerships and job-creating entities for the EB-5 projects that were presented to USCIS by SFRC.  Through the investigation I learned that SFRC was a sponsor for seven distinct EB-5 projects, and each of those seven EB-5 projects obtained investments from individual foreign investors.

3.      Throughout the investigation I worked closely with the case agents on the case and a DSS forensic accountant.  The financial investigation in this case involved obtaining and reviewing bank account records for numerous bank accounts, reviewing escrow documents obtained from Central Escrow, reviewing property transaction records including title company and loan records, and reviewing the investor petition files that were provided to USCIS in connection with the seven EB-5 projects.  As part of the overall investigation the forensic accountant and I prepared schedules of bank transactions in order to learn the source and use of investor funds that were paid by foreign investors into the SFRC EB-5 projects.  This work involved extensive scheduling and analysis of bank transactions, and extensive work reviewing USCIS petition files to tie information in those files and correlating that information to bank and escrow transactions in order to identify which financial transactions were related to which individual investors

4.      For the purposes of the upcoming sentencing hearing in this case, I relied on the work that was done in the investigation by me and the forensic accountant in order to calculate an estimate of the amount of investor funds that were diverted from three of the EB-5 projects:  CALLSOCKET III, NA3PL, and CALIFORNIA GOLD MEDAL ("CGM").  This estimate was obtained by tracing the flow of investor funds to determine which downstream accounts the money was transferred into or finally

spent from. All investor funds were forensically traced by a forensic accountant in accordance with commonly established methods of forensic accounting, including the Specific Item ("Spec Item") method of proof, and the First-in, First-out ("FIFO") method.

5. Financial records we analyzed included the investor petition files submitted to USCIS, which include documentation of source and path of funds, and looking at those records allows us to correlate the money wired into Central Escrow accounts with each investor. Bank records were then used to trace investor funds transferred from Central Escrow bank accounts to accounts associated with the limited partnership entities for each EB-5 project. Investor funds that were transferred to various business accounts and entities, as identified in the attachments to this declaration, were considered unrelated to the investor's EB-5 project company and were tallied as "Misdirected Funds". Investor money paid to people or entities expressly unrelated to the investor's given company were also tallied as "Misdirected Funds".

6. Many investors were charged a syndication fee, often about $50,000, on top of their principal investment of $500,000. During the investigation, I have learned that the syndication fee could be used by SFRC for administrative purposes and therefore did not need to be spent on expenditures related to the investor's EB-5 project. Petition and financial records were used to tabulate the amount of syndication fees received from each investor in CALLSOCKET III, NA3PL, and CGM, and these amounts were subtracted from the total "Misdirected Funds" amounts—essentially "crediting" that amount of funds over which SFRC had discretion—in order to determine the total amount of misappropriation related to each of the three businesses.

**C. Materials Considered**

7. The following documents and records were used for this analysis:

8. Financial records included bank statements, signature cards, deposit slips, checks deposited, withdrawals, cancelled checks, wire transfers, loan applications, financial statements, certificates of deposit, money market records, records revealing annual interest paid or accumulated, monthly billing statements, money order purchases, letters of credit, loan agreements, appraisal reports, notes or mortgages, settlement sheets, repayment records, lien documents, and loan correspondence files. The financial records analyzed covered the period from approximately January 2008 through July

2019, and included data from American Express, Applied Bank, Bank of America, Capital One, Central Escrow, Citibank, City National Bank, Comenity Bank, Community Bank of the Bay, Discover Financial Services, Dudum Financial, East West Bank, EverBank, Fifth Third Bank, First National Bank, HSBC Bank, JP Morgan Chase, Key Bank, Metropolitan Bank, Mid Valley Financial, Opus Bank, Preferred Bank, Regions Bank, Summit Bank, Synchrony Bank, Thorofare Capital, Torrey Pines Bank, U.S. Bank, and Wells Fargo Bank.

9.     Petition files submitted to U.S. Citizenship and Immigration Services ("USCIS") by the San Francisco Regional Center ("SFRC") on behalf of the CALLSOCKET III, NA3PL, and CGM investors, including Forms I-526, I-829, and I-485, articles of incorporation, secretary of state filings, USCIS correspondence, stock purchase agreements, business plans, Targeted Employment Area (TEA) justifications, source of funds records, path of funds records, bank statements and accompanying financial records, and Request for Evidence (RFE) submissions. The petition files analyzed covered the period from approximately September 2014 through approximately January 2017, and consisted of documents obtained exclusively from USCIS.

10.     I reviewed the foregoing materials and relied upon consultation with forensic accountants, DSS special agents, investigative analysts, and USCIS immigration officers to confirm my understanding of these materials.

**D.     Investigative Findings**

11.     The review of records determined that there were 41 CALLSOCKET III investors, 42 NA3PL investors, and 48 CGM investors.  The CALLSOCKET III bank account in the name of CALLSOCKET III, LP received $20,497,275 in principal, and $1,702,526 in syndication fees, for a total of $22,199,801 (ATTACHMENT 1).  The NA3PL bank account in the name of NA3PL, LP received $20,491,934 in principal, and $1,911,901 in syndication fees, for a total of $22,403,835 (ATTACHMENT 2).  The CGM bank accounts in the name of CALIFORNIA GOLD MEDAL, LP received $24,023,792 in principal, and $1,209,181 in syndication fees; however, only $8,485,507 in principal, and $1,090,161 in syndication fees ever left the escrow account, for a total of $9,575,668 (ATTACHMENT 3).

12.     Forensic tracing of CALLSOCKET III investor money determined that $17,299,335 was

misdirected into unrelated business accounts and/or spent on unrelated expenses (ATTACHMENT 1). After backing out the $1,702,526 in CALLSOCKET III syndication fees, the total misappropriation of CALLSOCKET III investor funds was determined to be $15,596,809 (ATTACHMENT 1).

13. The NA3PL tracing determined that $18,416,957 of NA3PL investor money was misdirected into unrelated business accounts and/or spent on unrelated expenses (ATTACHMENT 2). The $1,911,901 in NA3PL syndication fees was likewise subtracted from this amount, bringing the total misappropriation of NA3PL investor funds to $16,505,056 (ATTACHMENT 2).

14. Forensic tracing of CGM funds showed that $3,037,251 was misdirected into unrelated business accounts and/or spent on unrelated expenses (ATTACHMENT 3). After backing out the $1,090,161 in CGM syndication fees, the total misappropriation of CGM investor funds was determined to be $1,947,090 (ATTACHMENT 3).

15. Based on the above analysis, I estimate the total misappropriation of CALLSOCKET III, NA3PL, and CGM investor funds is $34,048,955.

16. I declare under penalty of perjury that the foregoing is true and correct. Executed on November 22, 2022, in San Francisco, California.

DAVID M PINCK Digitally signed by DAVID M PINCK
Date: 2022.11.22 13:54:48 -08'00'

David Pinck

**Callsocket III, LP**
**Investor Funds**

| # | Investor | Principal | Syndication Fees | TOTAL INVESTMENT WITHDRAWN |
|---|---|---|---|---|
| 1 | ZH | $500,000.00 | $49,100.00 | $549,100.00 |
| 2 | ZH | $500,000.00 | $49,060.00 | $549,060.00 |
| 3 | ZH | $500,000.00 | $49,100.00 | $549,100.00 |
| 4 | LA | $500,000.00 | $49,100.00 | $549,100.00 |
| 5 | LI | $500,000.00 | $49,050.00 | $549,050.00 |
| 6 | ZE | $500,000.00 | $49,050.00 | $549,050.00 |
| 7 | ZH | $500,000.00 | $49,050.00 | $549,050.00 |
| 8 | C | $500,000.00 | $0.00 | $500,000.00 |
| 9 | PE | $500,000.00 | $15.00 | $500,015.00 |
| 10 | H | $500,000.00 | $49,100.00 | $549,100.00 |
| 11 | C | $500,000.00 | $49,100.00 | $549,100.00 |
| 12 | H | $500,000.00 | $49,099.00 | $549,099.00 |
| 13 | ZH | $500,000.00 | $36,853.92 | $536,853.92 |
| 14 | Y | $500,000.00 | $49,055.00 | $549,055.00 |
| 15 | Y | $500,000.00 | $49,135.00 | $549,135.00 |
| 16 | C | $500,000.00 | $49,099.00 | $549,099.00 |
| 17 | Y | $500,000.00 | $49,175.00 | $549,175.00 |
| 18 | ZH | $500,000.00 | $49,079.00 | $549,079.00 |
| 19 | ZH | $500,000.00 | $49,099.00 | $549,099.00 |
| 20 | LI, | $500,000.00 | $49,075.00 | $549,075.00 |
| 21 | N | $500,000.00 | $49,050.00 | $549,050.00 |
| 22 | Z | $500,000.00 | $37,209.89 | $537,209.89 |
| 23 | H | $500,000.00 | $49,135.00 | $549,135.00 |
| 24 | ZH | $450,000.00 | $0.00 | $450,000.00 |
| 24 | ZH | $50,000.00 | $50,000.00 | $100,000.00 |
| 25 | YE | $500,000.00 | $49,996.57 | $549,996.57 |
| 26 | C | $500,000.00 | $50,024.00 | $550,024.00 |
| 27 | ZH | $500,000.00 | $50,000.00 | $550,000.00 |
| 28 | S | $500,000.00 | $49,099.00 | $549,099.00 |
| 29 | LI | $500,000.00 | $50,074.00 | $550,074.00 |
| 30 | W | $500,000.00 | $49,135.00 | $549,135.00 |
| 31 | W | $500,000.00 | $49,050.00 | $549,050.00 |
| 32 | Y | $499,015.00 | $0.00 | $499,015.00 |
| 33 | C | $499,135.00 | $50,000.00 | $549,135.00 |
| 34 | H | $499,125.00 | $0.00 | $499,125.00 |
| 35 | D | $500,000.00 | $50,024.00 | $550,024.00 |
| 36 | JE | $500,000.00 | $49,135.00 | $549,135.00 |
| 37 | Y | $500,000.00 | $50.00 | $500,050.00 |
| 38 | TA | $500,000.00 | $50,000.00 | $550,000.00 |
| 39 | XI | $500,000.00 | $50.00 | $500,050.00 |
| 40 | JI | $500,000.00 | $49,099.00 | $549,099.00 |
| 41 | ZH | $500,000.00 | $50,000.00 | $550,000.00 |
| | | **$20,497,275.00** | **$1,702,526.38** | **$22,199,801.38** |

| Callsocket III Misdirected Funds | |
|---|---|
| **Destination Account/Entity** | **Amount** |
| SFRC (Op) EWB #3213 | $9,680,000.00 |
| SFRC CBB #2980 | $77,000.00 |
| SFRC CBB #3590 | $40,433.42 |
| BHD, LLP EWB #2983 | $287,958.44 |
| CS II, LP EWB #3866 | $1,193,211.12 |
| CS, LP EWB #3288 | $1,847,542.39 |
| CS HOLDING CO EWB #6398 | $607,000.00 |
| NA3PL, LLC EWB #4351 | $285,672.79 |
| CS, LP EWB #4849 | $1,357,455.48 |
| SFRC (PAYROLL) EWB #4807 | $432,500.00 |
| TESH, LLC EWB #7008 | $86,482.97 |
| NA3PL, LP EWB #6927 | $15,000.00 |
| TMH EWB #8222 | $129,000.00 |
| Aileen Yen EWB CD #8314 | $346,335.81 |
| SFRC EWB CD #9196 | $502,957.70 |
| JL GATEWAY EWB #8451 | $38,500.00 |
| TESH (PAY) EWB #7073 | $37,000.00 |
| QIAOYAN CHEN EWB #8972 | $278,285.29 |
| CALLTEKS (PAY) EWB #8782 | $28,000.00 |
| CALLTEKS JPMC AZ #9775 | $8,200.00 |
| Magic Ear | $20,800.00 |
| | **$17,299,335.41** |

| TOTAL CALLSOCKET III MISAPPROPRIATION | |
|---|---|
| **Misdirected Funds =** | **$17,299,335.41** |
| **Syndication Fees =** | **($1,702,526.38)** |
| **TOTAL MISAPPROPRIATION =** | **$15,596,809.03** |

ATTACHMENT 1

## NA3PL, LP
## Investor Funds

| # | Investor | Principal | Syndication Fees | TOTAL INVESTMENT WITHDRAWN |
|---|---|---|---|---|
| 1 | [redacted] | $499,135.00 | $0.00 | $499,135.00 |
| 2 | [redacted] | $500,000.00 | $59,149.00 | $559,149.00 |
| 3 | [redacted] | $499,129.00 | $0.00 | $499,129.00 |
| 4 | [redacted] | $500,000.00 | $57,950.00 | $557,950.00 |
| 5 | [redacted] | $500,000.00 | $59,100.00 | $559,100.00 |
| 6 | [redacted] | $500,000.00 | $59,125.00 | $559,125.00 |
| 7 | [redacted] | $500,000.00 | $59,074.00 | $559,074.00 |
| 8 | [redacted] | $500,000.00 | $59,150.00 | $559,150.00 |
| 9 | [redacted] | $500,000.00 | $58,809.00 | $558,809.00 |
| 10 | [redacted] | $500,000.00 | $59,099.00 | $559,099.00 |
| 11 | [redacted] | $500,000.00 | $56,549.00 | $556,549.00 |
| 12 | [redacted] | $499,125.00 | $0.00 | $499,125.00 |
| 13 | [redacted] | $499,155.00 | $59,955.00 | $559,110.00 |
| 14 | [redacted] | $499,099.00 | $0.00 | $499,099.00 |
| 15 | [redacted] | $499,055.00 | $0.00 | $499,055.00 |
| 16 | [redacted] | $500,000.00 | $48,920.00 | $548,920.00 |
| 17 | [redacted] | $500,000.00 | $60,050.00 | $560,050.00 |
| 18 | [redacted] | $500,000.00 | $60,024.00 | $560,024.00 |
| 19 | [redacted] | $500,000.00 | $59,125.00 | $559,125.00 |
| 20 | [redacted] | $500,000.00 | $60,050.00 | $560,050.00 |
| 21 | [redacted] | $500,000.00 | $0.00 | $500,000.00 |
| 22 | [redacted] | $500,000.00 | $59,300.00 | $559,300.00 |
| 23 | [redacted] | $499,099.00 | $0.00 | $499,099.00 |
| 24 | [redacted] | $500,000.00 | $59,125.00 | $559,125.00 |
| 25 | [redacted] | $500,000.00 | $59,050.00 | $559,050.00 |
| 26 | [redacted] | $500,000.00 | $59,050.00 | $559,050.00 |
| 27 | [redacted] | $500,000.00 | $49,010.00 | $549,010.00 |
| 28 | [redacted] | $500,000.00 | $59,100.00 | $559,100.00 |
| 29 | [redacted] | $500,000.00 | $59,135.00 | $559,135.00 |
| 30 | [redacted] | $500,000.00 | $59,099.00 | $559,099.00 |
| 31 | [redacted] | $499,079.00 | $59,999.00 | $559,078.00 |
| 32 | [redacted] | $500,000.00 | $59,050.00 | $559,050.00 |
| 33 | [redacted] | $500,000.00 | $59,085.00 | $559,085.00 |
| 34 | [redacted] | $500,000.00 | $59,099.00 | $559,099.00 |
| 35 | [redacted] | $499,058.00 | $0.00 | $499,058.00 |
| 36 | [redacted] | $500,000.00 | $59,075.00 | $559,075.00 |
| 37 | [redacted] | $500,000.00 | $60,222.00 | $560,222.00 |
| 38 | [redacted] | $500,000.00 | $49,085.00 | $549,085.00 |
| 39 | [redacted] | $0.00 | $0.00 | $0.00 |
| 40 | [redacted] | $500,000.00 | $59,099.00 | $559,099.00 |
| 41 | [redacted] | $500,000.00 | $49,090.00 | $549,090.00 |
| 42 | [redacted] | $500,000.00 | $59,099.00 | $559,099.00 |
| | | **$20,491,934.00** | **$1,911,901.00** | **$22,403,835.00** |

| NA3PL Misdirected Funds | |
|---|---|
| **Destination Account/Entity** | **Amount** |
| Callsocket II LP EWB #3866 | $788,384.38 |
| SFRC EWB #3213 | $1,878,349.28 |
| Immedia SFRC EWB #5523 | $508,182.60 |
| Immedia SFRC EWB #5531 | $140,236.02 |
| SFRC CBB #3213 | $118,442.77 |
| SFRC CBB #2980 | $172,703.15 |
| SFRC (Pay) EWB #4807 | $547,807.60 |
| SFRC dba Trib Tav EWB #6943 | $2,037.13 |
| CS Holding EWB #6398 | $502,731.07 |
| CS III EWB #4682 | $356,925.05 |
| Callsocket LP EWB #3288 | $2,118,263.95 |
| CS LP (Pay) EWB #4849 | $3,809,753.39 |
| Overseas | $689,430.00 |
| Tesh EWB #7008 & #7073 | $954,277.04 |
| JL Gateway LLC EWB #6216 & 8451 | $230,685.99 |
| Magic Ear | $103,023.85 |
| True Agility | $20,225.00 |
| CS LP & CS II LP Receiverships | $74,126.35 |
| SFRC EWB CD #9196 | $97,042.30 |
| SFRC (Chk cashed) | $116,741.75 |
| CCOO - EWB #4690 & SB #8013 | $100,100.00 |
| Central CA Farms EWB #5945 | $6,215.21 |
| Callteks Sec EWB #8782 & #7156 | $187,622.02 |
| City Brand Med EWB #6059 | $9,000.00 |
| True Agility | $104,800.43 |
| This Is There Restaurant | $42,962.87 |
| Kexing Hu | $708,573.55 |
| Ubik Solution Ltd | $1,301,632.63 |
| Shanghai Hemei Inv | $1,046,000.00 |
| Thomas M Henderson | $182,238.70 |
| Qiaoyan Chen EWB #8972 | $802,754.05 |
| West Oak Pl EWB #5036 | $12,500.00 |
| Wifi Rail Citi #7941 | $42,000.00 |
| Geodomain Dev Ventures | $144,956.12 |
| CS LP (Runway) EWB #4443 | $44,500.00 |
| Tribune Tavern | $2,483.33 |
| SRI Nine Mkt Sq Runway | $220,545.11 |
| Callsocket LP PB #8915 | $126,828.82 |
| Callsocket LP WaMu #8166 | $1,000.00 |
| Old Republic Title | $100,876.00 |
| | **$18,416,957.51** |

| TOTAL NA3PL MISAPPROPRIATION | |
|---|---|
| **Misdirected Funds =** | **$18,416,957.51** |
| **Syndication Fees =** | **($1,911,901.00)** |
| **TOTAL MISAPPROPRIATION =** | **$16,505,056.51** |

ATTACHMENT 2

**California Gold Medal, LP**
**Investor Funds**

| # | Investor | Principal | Syndication Fees | TOTAL INVESTMENT WITHDRAWN |
|---|---|---|---|---|
| 4 | Fe | $499,137.50 | $60,000.00 | $559,137.50 |
| 6 | G | | $60,000.00 | $60,000.00 |
| 7 | H | | $60,024.00 | $60,024.00 |
| 8 | H | $500,000.00 | $50.00 | $500,050.00 |
| 9 | H | $499,135.00 | $60,050.00 | $559,185.00 |
| 10 | Jia | $499,099.00 | | $499,099.00 |
| 11 | Jia | | $60,024.00 | $60,024.00 |
| 16 | Li, | $499,058.00 | | $499,058.00 |
| 17 | Li, | | $60,024.00 | $60,024.00 |
| 19 | Li | | $9,974.00 | $9,974.00 |
| 20 | Li | $499,099.00 | $59,974.00 | $559,073.00 |
| 21 | Li | | $60,094.41 | $60,094.41 |
| 22 | Lu | $499,099.00 | $60,004.00 | $559,103.00 |
| 24 | Ly | | $60,024.00 | $60,024.00 |
| 26 | Pa | $499,099.00 | | $499,099.00 |
| 27 | Qi | $499,068.00 | | $499,068.00 |
| 29 | Sh | $499,135.00 | $59,974.00 | $559,109.00 |
| 31 | Su | $499,099.00 | $59,974.00 | $559,073.00 |
| 34 | W | $499,099.00 | | $499,099.00 |
| 37 | W | $499,137.50 | $60,000.00 | $559,137.50 |
| 38 | Xi | $499,098.00 | | $499,098.00 |
| 40 | Yu | $499,135.00 | | $499,135.00 |
| 43 | Zh | $498,910.00 | | $498,910.00 |
| 44 | Zh | $499,099.00 | $59,974.00 | $559,073.00 |
| 45 | Zh | | $60,000.00 | $60,000.00 |
| | UNKNOWN | | $59,974.00 | $59,974.00 |
| | UNKNOWN | | $60,023.00 | $60,023.00 |
| | UNKNOWN | | $60,000.00 | $60,000.00 |
| | | **$8,485,507.00** | **$1,090,161.41** | **$9,575,668.41** |

| CGM Misdirected Funds | |
|---|---|
| **Destination Account/Entity** | **Amount** |
| Binary Software Solutions<br>WFB #7884 & BofA#4625 | $852,432.63 |
| Network Technologies<br>BofA #0221 & JPMC #6577 | $1,541,093.75 |
| Ubik Solution Ltd | $630,000.00 |
| NA3PL, LLC EWB #4351 | $13,725.16 |
| | **$3,037,251.54** |

| TOTAL CGM MISAPPROPRIATION | |
|---|---|
| **Misdirected Funds =** | **$3,037,251.54** |
| **Syndication Fees =** | **($1,090,161.41)** |
| **TOTAL MISAPPROPRIATION =** | **$1,947,090.13** |

ATTACHMENT 3